UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DARNELL F. WILLIAMS,

        Plaintiff,

    v.                                                      Case No. 19-C-1873

KENNY DAY, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Darnell F. Williams, who is serving a state prison sentence at Dodge Correctional Institution and is representing himself, filed this action pursuant to 42 U.S.C. §1983, alleging that his civil rights were violated while he was incarcerated at Racine Correctional Institution. Williams is proceeding on an Eighth Amendment claim against Defendant Kenny Day based on his allegations that Day sexually assaulted him while he was in the shower. He also is proceeding on First Amendment retaliation claims against Defendants Day, Audrey Bucher, and Teresa Wiegand based on his allegations that conduct reports were issued to him after he reported Day's alleged misconduct pursuant to the Prison Rape Elimination Act (PREA). Dkt. No. 12. On October 20, 2020, Defendants moved for summary judgment, and, on November 9, 2020, Williams moved for summary judgment. Dkt. Nos. 18, 34. The Court will grant Defendants' motion, deny Williams' motion, and dismiss this case.

## BACKGROUND

On October[1] 23, 2019, Day noticed Williams in the shower while making a security round and ordered him back to his cell because Williams was on room confinement and was not permitted to leave his room without permission. Dkt. No. 20 at ¶2. Williams asserts that Day came into the shower and grabbed him and that he never ordered him back to his bunk. Dkt. No. 39 at ¶2; Dkt. No. 34 at ¶3. Williams made a PREA call about Day walking in on him in the shower, but, according to Williams, Day hung up the phone before he could give additional details. Dkt. No. 20 at ¶¶3-4; Dkt. No. 39 at ¶¶3-4. Defendants explain that Williams' assertion that Day had walked in on him in the shower did not implicate PREA, so there was no investigation. Dkt. No. 20 at ¶5.

Defendants explain that, later that same day, Bucher wrote Williams a conduct report for disobeying orders and being in an unassigned area because Williams did not wait his turn to use the phone as ordered and because he was on room confinement and was not supposed to leave his cell. Dkt. No. 20 at ¶8. Wiegand found Williams guilty of both violations and gave him five days of room confinement. *Id.* at ¶9. Afterwards, Bucher wrote Williams a second conduct report because, despite being on room confinement and having just been warned to obey the rules of his confinement, he left his cell without asking permission to use the bathroom. *Id.* at ¶10. Wiegand found Williams guilty and imposed another five days room confinement. *Id.* at ¶11. That night Bucher wrote Williams a *third* conduct report because he *again* left his cell without permission. *Id.* at ¶12. This conduct report proceeded as a major violation, and Williams accepted thirty days of disciplinary separation. *Id.* at ¶13.

---

[1] In their proposed statements of fact, Defendants assert that the incident occurred in August, not October; however, they later explain that this was an error. The incident occurred in October 2019.

Williams asserts that Bucher gave him the conduct reports because Day told her to because he was mad that Williams had made a PREA complaint against him. Dkt. No. 39 at ¶¶8-12.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA), which applies to this case because Williams was a prisoner when he filed his complaint, provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(1). Before turning to the merits of Williams' claims, the Court will address Defendants' argument that Williams failed to exhaust the administrative remedies on all but one of his claims.

According to the U.S. Supreme Court, exhaustion of administrative remedies must be done "properly" because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). To properly exhaust administrative remedies, prisoners must file their inmate complaints and appeals in the place, at the time, and in the manner that the institution's administrative rules require. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Further, it is well settled that an inmate's grievance must "alert[] the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002); *see also* Wis. Admin. Code § DOC 310.07(5) and (6) ("Each complaint may contain only one clearly identified issue" and "A complaint must contain sufficient information for the department to investigate and decide the complaint"). This is because "the primary purpose of requiring an inmate to exhaust his administrative remedies is to alert the state to the problem and invite corrective action." *Fluker v. County of Kankakee*, 741 F.3d 787, 794 (7th Cir. 2013) (internal quotation marks and citations omitted).

Defendants assert that Williams filed only one inmate complaint relevant to his claims, in which he alleged that Day walked in on him in the shower, hung up the phone when he tried to make a PREA call about it, and threatened to write a conduct report. Dkt. No. 20 at ¶6; Dkt. No. 22-2 at 7. Williams did not allege that Day touched him in any way, and he did not make any allegations of wrongdoing by any other person. Dkt. No. 20 at ¶7. Accordingly, Defendants assert that Williams exhausted only his allegation that Day retaliated against him and his allegation that Day walked in on him in the shower (which Defendants argue fails to state a claim). Dkt. No. 19 at 6. Williams' only response is that he "wrote a ICE to get help and nothing was done" and that he "never was spoke to about [his] ICE." Dkt. No. 39 at ¶¶6-7.

4

The inmate complaint Williams submitted focuses only on the actions of Day. Williams presents no evidence to support a conclusion that he submitted an inmate complaint about Bucher or Wiegand retaliating against him because he complained about Day. Given that Williams did not alert his institution to Bucher and Wiegand's alleged misconduct by filing an inmate complaint, he did not exhaust the available administrative remedies before he sued them. Bucher and Wiegand are entitled to summary judgment.

Williams also failed to exhaust the available administrative remedies with regard to his claim that Day sexually assaulted him in the shower. Williams concedes that he did not make allegations of a sexual assault in his PREA call; he asserted only that Day had walked in on him while he was showering.[2] Williams' inmate complaint is also silent on that point. The inmate complaint states only that Day "walked in the shower on me while I was naked." Walking in on someone who is showering and sexually assaulting someone by grabbing them while they are showering are significantly different. Even assuming Day did grab Williams as he now claims, Williams' inmate complaint did not contain sufficient information to give the institution notice of the nature of his complaint. As such, he deprived the institution of the opportunity to take corrective action. Williams states that he complained to several people about Day's actions, but, even if true, complaints outside the grievance process would be insufficient to satisfy the exhaustion requirement. It has long been settled that inmates must file their inmate complaints and appeals in the place, at the time, and in the manner that the institution's administrative rules require. Williams failed to do that. Because Williams did not exhaust the available administrative

---

[2] Williams asserts that he made a second PREA call, which he alleges was deleted. Williams provides no evidence to support this assertion, nor does he explain what he said during the alleged second call. Regardless, whether Williams made a second PREA call is of no consequence because he does not dispute that he filed only one inmate complaint.

remedies as to his Eighth Amendment claim against Day, the Court may not consider the merits of that claim and will dismiss it without prejudice.

As Defendants note, Williams' allegation that Day walked in on him while he was showering is insufficient to state a claim under the Eighth Amendment, particularly in light of Day's explanation that he was making securing rounds when he observed Williams. *See Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995) (explaining that "Guards take control of where and how prisoners live; they do not retain any right of seclusion or secrecy against their captors, who are entitled to watch and regulate every detail of daily life."). Thus, Williams' First Amendment retaliation claim against Day is the only claim Williams exhausted before he filed his lawsuit.

## ANALYSIS

The U.S. Supreme Court has explained that, "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (internal quotation marks and citations omitted). This means that, "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Id*. (internal quotation marks and citations omitted).

At screening, the Court allowed Williams to proceed on a retaliation claim against Day based on his allegations that Day instructed Bucher to issue Williams conduct reports after he made a PREA complaint about Day. Day denies that he instructed Bucher to write the conduct reports to retaliate against Williams. Dkt. No. 24 at ¶5. He explains that he instructed her to write the conduct reports because Williams had left his cell without permission despite being on room confinement and because he had disobeyed orders. *Id.* Bucher explains that she saw Williams

commit the violations for which he received the conduct reports, and she "did not issue any of these conduct reports out of retaliation for anything." Dkt. No. 23 at ¶10.

Williams provides no evidence from which a jury could reasonably conclude that Day instructed Bucher to write the conduct reports in order to retaliate against Williams. Williams highlights that Bucher wrote the conduct reports after he made the PREA call, but, while suspicious timing is sufficient to state a claim, it is not sufficient to survive summary judgment. *Springer v. Durflinger*, 518 F.3d 479, 485 (7th Cir. 2008). And, even if the sequence of events were sufficiently suspicious to support a finding of retaliatory motive, "suspicious timing is not enough to overcome uncontradicted evidence of other, non-retaliatory motives." *Williams v. Snyder*, 367 F. App'x 679, 682 (7th Cir. 2010) (finding that unrebutted evidence that a prison disciplined an inmate for disobeying orders overcame retaliation claim). Here, it is undisputed that Williams left his cell without permission and disobeyed orders, which was the basis for the conduct reports. In short, all Williams offers is his speculation about Day's motives, but speculation is insufficient to survive summary judgment. Day is entitled to summary judgment on this claim.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (Dkt. No. 18) is **GRANTED**. Williams' First Amendment claim against Bucher and Wiegand and his Eighth Amendment claim against Day are **DISMISSED without prejudice**, and his First Amendment claim against Day is **DISMISSED with prejudice**. Williams' motion for summary judgment (Dkt. No. 34) is **DENIED**. The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 16th day of February, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.